IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MELINDA THOMPSON, individually and As Administrator of the Estate of Gregory Thompson, Jr., Deceased <br><br> Plaintiff, <br><br> v. <br><br> CITY OF LEBANON, TENNESSEE, BILLY WEEKS (individually and in his official Capacity as Commissioner of Public Safety and Current Chief of Police for Lebanon, TN); SCOTT BOWEN (individually and in his official Capacity as former Chief of Police of Lebanon, TN, DAVID LEE MCKINLEY (individually and in his official capacity as a patrol officer of the Lebanon Police Department); and MITCHELL OWEN MCDANNALD (individually and in his official capacity as a patrol officer of the Lebanon Police Department) <br><br> Defendants. | No. 3:11-cv-392 <br><br> Judge Nixon <br> Magistrate Judge Knowles <br> Jury Demand |

---

**PRETRIAL BRIEF OF DEFENDANTS BILLY WEEKS AND SCOTT BOWEN**

---

Defendants Billy Weeks and Scott Bowen (Defendants "Weeks" and "Bowen," respectively), through counsel, hereby file their Pretrial Brief ahead of the trial in this matter.

**I. STATEMENT OF THE FACTS**

This case arises from an incident that occurred in the City of Lebanon, Tennessee, in the early morning hours of April 28, 2010 which resulted in the death of Gregory Thompson, Jr. (the "Decedent"). Because these facts have been briefed exhaustively in the defendants' respective motions for summary judgment and in the City of Lebanon's pre-trial brief, Defendants Weeks

and Bowen will not repeat all of the details of the incident, instead simply highlighting those facts most salient to the claims against these defendants and otherwise incorporating the previously briefed facts with brief overview.

At approximately 2:30am, the Decedent, who was driving drunk, nearly collided head on with the automobile being driven by Lebanon Police Department Officer David McKinley. Decedent then attempted to speed away, leading Lebanon Police Officers on an automobile chase for approximately six minutes. Although there is no evidence that Decedent ever submitted or surrendered to the authority of the police officers, eventually he lost control of his car, drove off an embankment and crashed into a fence. Officer McKinley then approached Decedent's vehicle on foot, while Officer Mitch McDannald took a cover position with his gun drawn. Officer McKinley never seized Decedent, and indeed never reached the vehicle. As Officer McKinley neared the vehicle, a sequence of events occurred which led Officer McDannald to reasonably believe that Decedent had shot Officer McKinley to the ground, so Officer McDannald fired on Decedent, killing him. Defendants Weeks and Bowen were not present at the incident and did not participate in it in any manner.

Plaintiff sued Officers McKinley and McDannald on various theories, but only one that is relevant to the claims against Defendants Weeks and Bowen: liability under 42 U.S.C. § 1983 for alleged deprivation of Decedent's 4th Amendment rights. At all times relevant to this case, Defendant Scott Bowen was the Lebanon Chief of Police, and Defendant Billy Weeks was the Public Safety Commissioner. Although neither Defendant Weeks nor Defendant Bowen were present at or near the incident, Plaintiff sued Defendants Weeks and Bowen for "supervisor liability" under §1983. In order to attribute personal liability to Defendants Weeks and Bowen under §1983, Plaintiff alleges that the department policies and practices Defendants Weeks and

Bowen implemented regarding hiring, training and supervision were not only inadequate, but that it was so obvious that the particular inadequacies would lead to a deprivation of constitutional rights that Defendants Weeks and Bowen should be found to have been "deliberately indifferent" to the fact that their policies and practices would lead to a constitutional violation if not remedied. Plaintiff alleges that this "deliberate indifference" of Defendants Weeks and Bowen directly and proximately caused Decedent's 4th Amendment Rights to be violated.

As has been previously briefed exhaustively, both prior to and after the incident on April 20, 2010, Lebanon Police Officers received substantial and repetitive training on issues such as department policies, use and handling of firearms, use of deadly force, pursuits, and approach of stopped vehicles. That list of training will not be repeated, but it is incorporated herein. (City of Lebanon's Memorandum in Support of Summary Judgment, Doc. Entry No. 109, pp. 7-13, 34-36; City of Lebanon's Pre-trial Brief, Doc. Entry 274, pp. 4-6).

In addition to the aforementioned regular training, in 2003, in an effort to ensure they had high quality policies, training, supervision, and hiring procedures, the Lebanon Police Department accredited with the Commission on Accreditation for Law Enforcement Agencies (CALEA), which required that the LPD comply with CALEA policy, training and practice requirements and be audited by CALEA representatives. CALEA is an internationally recognized credentialing authority dedicated to developing professional police standards and helping law enforcement agencies implement those standards. Upon obtaining this certification in 2003, the percent of arrests requiring use of force dropped dramatically[1], and the LPD has

---

[1] It is undisputed by all parties to this lawsuit – and notably by Plaintiff's own expert witness – that a use of force does not necessarily mean there has been any wrongful conduct by an officer, as the use of force is often necessary. However, to the extent that virtually everyone would agree that it is preferable that arrests involve use of force as seldom as possible, this clear statistical change is a fact which bears on the issue of whether Defendants

{01085198.3 }3

continued to comply with CALEA requirements, policy and training audits and standards ever since, including on the date of the incident at issue.

In the years preceding the incident in this case (01/01/07- 04/27/10), there were no reported uses of deadly force by officers employed by the LPD. Prior to this incident, at no point in their entire law-enforcement careers had Defendant McKinley or Defendant McDannald discharged their weapons. Further, there were no prior incidents with either of these officers that were at all similar to a deadly use of force, such that Defendants Weeks or Bowen could have anticipated that they were likely to be involved in one.

**STATEMENT OF THE ISSUES**

1. Defendants Bowen and Weeks deny that they in any way violated Mr. Thompson's Fourth Amendment right to be free from unreasonable seizures. Defendants Bowen and Weeks deny that there was any underlying violation of Mr. Thompson's 4th Amendment Rights, as Officer McKinley never "seized" Mr. Thompson, and Officer McDannald's actions were reasonable and constitutional under the circumstances that were presented to him and information available to him.

2. Defendants Bowen and Weeks deny that they failed to properly screen, hire, train, supervise, investigate, or discipline the officers under their supervision, or promulgated or implemented any policy or procedure that contributed to or was a moving force behind any alleged violation of Plaintiff's civil rights. Moreover, Defendants Bowen and Weeks further deny that they maintained any such custom, policy, procedure, or practice with "deliberate indifference" to anyone's constitutional rights, including Mr. Thompson's.

---

Weeks and Bowen attempted, in good faith, to implement good policies and practices or were "deliberately indifferent" to the obvious constitutional violations that would occur from their "inadequate" policies and practices.

{01085198.3 }4

Case 3:11-cv-00392   Document 293   Filed 06/09/14   Page 4 of 12 PageID #: 8560

3. Defendants Bowen and Weeks did not ratify the officers' alleged unconstitutional actions or encourage such constitutional violations, as there is no clear and persistent pattern of LPD police officers using unconstitutional deadly force, and Defendants Bowen and Weeks acted reasonably in investigating this incident -- an investigation that resulted in the officers receiving retraining designed to ensure that this tragic but honest mistake is not repeated.

4. Finally, Defendants Bowen and Weeks raise the defense of qualified immunity and assert that even if the Court were to somehow find that Mr. Thompson's 4th Amendment Rights were violated, and that inadequate LPD policies and practices were the proximate cause of that violation, they are immune from suit because Plaintiff has failed to establish that the right at issue was clearly established by pre-existing case law sufficiently analogous to the instant case that Defendants Bowen and Weeks should have known that their conduct in these particular circumstances violated that clearly established right. Defendants Bowen and Weeks further assert that they are entitled to qualified immunity because their actions were objectively reasonable under the circumstances.

## II. PROPOSITIONS OF LAW

**1. Lack of Underlying Constitutional Violations by Defendants McKinley and McDannald Defeats Plaintiff's Claims against Defendants Weeks and Bowen.**

Unless there was an underlying violation of Mr. Thompson's 4th Amendment rights by Defendants McKinley and McDannald, then Defendants weeks and Bowen cannot be liable under § 1983 for such violation. *Gardenhire v. Shubert*, 205 F.3d 303, 310 (6th Cir. 2000); *Waters v. City of Morristown*, 242 F.3d 353, 358059 (6th Cir. 2001). Defendants Weeks and Bowen incorporate by reference the arguments of the City of Lebanon and Defendants McKinley and McDannald that there was no underlying 4th Amendment violation, in

that Defendant McKinley did not "seize" Mr. Thompson and Defendant McDannald's actions were reasonable, given the circumstances he encountered and the information available to him at the time.

**2. Plaintiff Cannot Meet the High Standard for "Supervisor Liability"**

For Defendants Weeks and Bowen to be personally liable for the alleged violations of Mr. Thompson's 4th Amendment Rights due to their allegedly inadequate policies, hiring, training, supervision and discipline, it is not enough that Plaintiff establish that they should have had better policies, hiring, training, supervision and discipline, as negligence is not sufficient to establish a § 1983 violation. *Daniels v. Williams*, 474 U.S. 327, 330–33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Rather, for Defendants Bowen and Weeks to be liable for the Constitutional violation allegedly caused by Defendants McKinley and/or McDannald on a theory of §1983 supervisor liability, Plaintiff must prove, not only that Defendants Bowen could have or should have done better, but that in fact they were "deliberately indifferent" to the fact that their inadequate policies, training, etc., would lead to the obvious and foreseeable result of McKinley and McDannald committing this type of Constitutional violation. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

The standard of "deliberate indifference" is a stringent one and requires proof that the defendants "disregarded a known or obvious consequence" of their actions. *Cunningham v. Sisk*, 2003 WL 23471541 (E.D. Tenn. Dec. 4, 2003) at *15 (citing *Brown*, 520 U.S. 397 at 410, 117 S.Ct. 1382). For Plaintiff to establish that the LPD's training of officers met the "deliberately indifferent" standard, including case law that states that to meet the standard, there must be a prior pattern of similar constitutional violations by untrained employees or such a complete failure to train the police force "that future police misconduct is almost inevitable or would be

characterized as substantially certain to result." *Harvey v. Campbell County*, Tenn, 453 F.App'x 557, 567 (6th Cir. 2011) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)). (City Reply, pp. 5-7, Doc. Entry 200).

The evidence overwhelmingly establishes that the LPD's policies, training, hiring practices, supervision and discipline were well above the required standard, and while Plaintiff and its expert witness contend that certain specific practices, training or actions should have been done differently, at absolutely worst all that Plaintiff would be able to establish is negligence. There is certainly no evidence of "deliberate indifference" on the part of the Defendants Bowen and Weeks with regard to any of the policies, practices or training in the LPD. Moreover, acts subsequent to the incident at issue cannot constitute a "ratification" of the incident or meet the standard of deliberate indifference which proximately caused the incident unless the subsequent acts were representative of (1) a clear and persistent pattern of illegal activity, (2) which the Department knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the Department's custom was the cause of the shooting in this case. *Thomas v. City of Chattanooga*, 398 F.3d 426, 433-34 (6th Cir. 2005). Plaintiff has no evidence of any such prior clear and persistent pattern.

### 3. Qualified Immunity

Even if Mr. Thompson's 4th Amendment Rights were violated by Defendants McKinley and McDannald, and even if the inadequate policies, practices, training, hiring and supervision of Defendants Weeks and Bowen directly and proximately caused that constitutional violation to happen, Defendants Weeks and Bowen are still entitled to qualified immunity, unless at the time of the incident, the prior case law had clearly established that unless Defendants Weeks and Bowen did something about the policies, training and department practices, the obvious result

would be the violation of someone's constitutional rights, such as Mr. Thompson. Unless the existing precedent was such that any reasonable official in the position of Weeks and Bowen would have known that maintaining the LPD's then-current training, hiring practices and supervision practices would lead to constitutional violations, these defendants are protected by qualified immunity. *Gardenhire v. Schubert*, 205 F.3d at 311 (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The defense of qualified, or good faith, immunity shields "government officials performing discretionary functions... from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitsgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

For the actions of Defendants Weeks and Bowen to obviously violate Mr. Thompson's clearly established right to be protected from unreasonable searches and seizures, the pre-existing case law must make it obvious to officials in their shoes that constitutional rights such as those of Mr. Thompson will be violated if they don't change the department's policies, training or practices. To overcome qualified immunity, Plaintiff must establish that the case law indicating that these policies, training and practices would lead to constitutional violations was sufficiently clear that no reasonable official in their position could disagree on this point. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)(holding that immunity applies if any reasonable official could disagree).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir.1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). That is, federal constitutional, statutory or

{01085198.3 }8

Case 3:11-cv-00392   Document 293   Filed 06/09/14   Page 8 of 12 PageID #: 8564

case law existing at the time of the challenged action must establish *with particularity* that the actions at issue violate a constitutional or federal law right. The United States Supreme Court has articulated the standard as follows:

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. Harlow would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987)(citations omitted). The Supreme Court concluded that while it is not necessary that the same precise circumstances have been previously adjudicated, there must be a close enough fit between the events in the instant case and the pre-existing law that the unlawfulness of the officer's conduct "must be apparent." *Anderson v. Creighton*, 483 U.S. at 640.

In determining whether it would have been apparent to a reasonable officer that his or her conduct violates the plaintiff's rights, "officers are entitled to the benefit of the doubt." *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996). That is, immunity applies if reasonable officials could disagree as to whether the conduct violated the plaintiff's rights.

*Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Thomas v. Cohen*, 304 F.3d 563, 580 (6th Cir. 2002). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Further, "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id*.

Plaintiff cannot provide pre-existing case law that established that Defendant Weeks and Bowen's actions violated the Decedent's rights with sufficient clarity and particularity that Defendants Weeks or Bowen should have known that their conduct under those circumstances violated the Decedent's constitutional rights. Indeed, Plaintiff does not even seem to try, giving this issue only lip-service. Plaintiff puts considerable energy into contending that prior to the incident the LPD should have trained its officers differently or should have made different hiring or management decisions. However, the question is not whether the LPD's policies or practices were insufficient or whether there was a more reasonable approach. The question is whether there is case law sufficiently establishing the contours of good and bad policies, training and practices, such that that Defendants Bowen and Weeks would have known that to fail to provide this training would obviously result in an obvious constitutional violation. Plaintiff provides no such case law, because there is none. If the LPD policies, practices or training were inadequate, and if Defendants Weeks' and Bowen's actions in that regard thus caused Mr. Thompson to suffer a 4th Amendment Violation, there is no credible argument that the state of the case law was such that it should have been obvious to Defendants Weeks and Bowen. Accordingly, Defendants Weeks and Bowen are immune from suit.

{01085198.3 }10

Case 3:11-cv-00392   Document 293   Filed 06/09/14   Page 10 of 12 PageID #: 8566

## III. EVIDENTIARY MATTERS

The anticipated evidentiary matters are contained in the defendants' respective motions in limine.

## IV. DAMAGES

Plaintiff seeks compensatory and punitive damages, along with attorneys' fees and costs. Defendants Weeks and Bowen contend that Plaintiff is entitled to no recover, and that costs, fees and discretionary costs should be taxed against Plaintiff.

Respectfully Submitted,

*/s/ Bryan E. Pieper*

**BRYAN E. PIEPER (TNBPR # 016852)**
**BONE MCALLESTER NORTON, PLLC**
511 Union Street, Suite 1600
Nashville, TN 37219
(615) 238-6300

**PETER C. ROBISON (TNBPR # 027498)**
**CORNELIUS & COLLINS, LLP**
511 Union Street, Suite 1500
P.O. Box 190695
Nashville, TN 37219-0695
(615) 244-1440

*Attorney for Defendants Weeks and Bowen*

## CERTIFICATE OF SERVICE

I certify that on this 9th day of June, 2014, a true and correct copy of the foregoing was served upon the following counsel via the Court's electronic case filing system:

>Danese K Banks, Esq.
>Ursula Y. Holmes, Esq.
>Andrew C. Clarke, Esq.
>William N. Bates, Esq.
>Jennifer Orr Locklin, Esq.
>El Shon D. Richmond, Esq.
>Mark E. McGrady, Esq.
>Robert M. Burns, Esq.
>Patrick J. Gray, Esq.

>s/ *Bryan E. Pieper*
>Bryan E. Pieper